UNITED STATES DISTRICT COURT
EASTERN DISTICT OF MICHIGAN
SOUTHERN DIVISION

ANGELA MCPHEE,

               Plaintiff,          Civil Action No.: 14-13216
                                     Honorable George Caram Steeh
               v.              Magistrate Judge Elizabeth A. Stafford

CAROLYN W. COLVIN,
Acting Commissioner of
Social Security,

               Defendant.
_____/

**REPORT AND RECOMMENDATION
ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [R. 14, 17]**

    Plaintiff Angela McPhee appeals a final decision of Defendant

Commissioner of Social Security ("Commissioner") denying her

applications for Disability Insurance Benefits ("DIB") and Supplemental

Security Income ("SSI") under the Social Security Act (the "Act"). Both

parties have filed summary judgment motions, referred to this Court for a

Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). The

Court finds McPhee's arguments should be deemed waived, that the

Administrative Law Judge ("ALJ") did not err in her weighing of the various

medical opinions of record and that her decision is otherwise supported by

substantial evidence. For these reasons, the Court **RECOMMENDS** that:

- the Commissioner's motion [R. 17] be **GRANTED**;

- McPhee's motion [R. 14] be **DENIED**; and,

- the Commissioner's decision be **AFFIRMED**, pursuant to sentence four of 42 U.S.C. § 405(g).

## I.   BACKGROUND

### A.   Plaintiff's Background and Alleged Disabling Conditions

McPhee is a thirty-five year old high school special education graduate who had worked as a cashier, fast food worker, deli slicer and laundry attendant.  She claims disability as a result of back, elbow and knee pain, as well as mental conditions including depression, anxiety and a learning disorder/mental retardation.

### B.   Procedural History

McPhee filed applications for DIB and SSI alleging disability as of December 12, 2006.  The claims were denied initially, and McPhee filed a timely request for an administrative hearing, held on August 3, 2010, at which both she and a vocational expert ("VE") testified.  [R. 11-2, Tr. 29-58].  In a September 22, 2010 written decision, the ALJ found McPhee not disabled and the Appeals Council denied review.  [*Id.*, Tr. 5-10, 12-28]. McPhee appealed the decision to this Court, and on May 23, 2013, Magistrate Judge Hluchaniuk recommended that the case be remanded for

2

the ALJ to procure a medical expert on the issue of equivalency and to

further consider McPhee's award of state disability benefits.  *McPhee v.*

*Comm'r of Soc. Sec.*, No. 12-13931, 2013 WL 3224420 (E.D. Mich. May

23, 2013).  The recommendation was adopted, and the Appeals Council

remanded the case for further proceedings.  *Id.*, [R. 11-11, Tr. 885-89].  In

the interim, McPhee filed a new application for benefits, alleging the same

date of onset, which was consolidated with the pending matter.  [*Id.*, Tr.

887].

On February 19, 2014, a different ALJ held a second hearing.  [R. 11-

10, Tr. 732-778].  She incorporated an additional 637 pages of medical

records and received testimony from McPhee, a VE, as well as two medical

experts, Dr. Keith Holan, an internal medicine physician, and Dr. Jeffrey

Fremont, a psychologist.  [*Id.*].  In an April 18, 2014 written opinion, the ALJ

again found McPhee not disabled, and (presumably) the Appeals Council

denied review, making the ALJ's decision the final decision of the

Commissioner for purposes of this review.  [*Id.*, Tr. 698-731].[1]  McPhee

timely filed for judicial review of the final decision.  [R. 1].

---

[1] Although the record contains no Appeals Council denial of review of this
second decision in the record, neither party disputes that the Appeals
Council did indeed deny review, and that the ALJ's decision is the final
decision of the Commissioner.

## C.    The ALJ's Application of the Disability Framework

DIB and SSI are available for those who have a "disability."  *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).  A "disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

The Commissioner determines whether an applicant is disabled by analyzing five sequential steps.  First, if the applicant is "doing substantial gainful activity," he or she will be found not disabled.  20 C.F.R. § 404.1520(a)(4); 20 C.F.R. § 416.920(a)(4).[2]  Second, if the claimant has not had a severe impairment or a combination of such impairments[3] for a continuous period of at least 12 months, no disability will be found.  *Id.* Third, if the claimant's severe impairments meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, the claimant will be found disabled.  *Id.*  If the fourth step is reached, the Commissioner considers its assessment of the claimant's residual

---

[2] Sections 1520(a)(4) and 920(a)(4), which pertain to DIB and SSI respectively, list the same five-step analysis.

[3] A severe impairment is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities."  §§ 1520(c); 920(c).

4

functional capacity ("RFC"), and will find the claimant not disabled if he or she can still do past relevant work. *Id.* At the final step, the Commissioner reviews the claimant's RFC, age, education and work experiences, and determines whether the claimant could adjust to other work. *Id.* The claimant bears the burden of proof throughout the first four steps, but the burden shifts to the Commissioner if the fifth step is reached. *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

Following the five-step sequence, the ALJ concluded that McPhee was not disabled. At step one, she found that McPhee had not engaged in substantial gainful activity since her alleged onset date. [R 11-10, Tr. 704]. At step two, she identified the following severe conditions:

> degenerative disc disease, thoracic spinal disorder, bilateral knee disorder, right foot disorder, right arm disorder, asthma, allergic rhinitis, migraine headaches, obesity, affective disorder, anxiety disorder, personality disorder, borderline intellectual functioning, and history of learning disorder.

[*Id.*]. At step three, relying on the testimony of the two medical experts, the ALJ concluded that none of McPhee's severe impairments, either alone or in combination, met or medically equaled a listed impairment. [*Id.*, Tr. 706-709]. In making this finding, the ALJ determined that McPhee had mild restriction in activities of daily living, moderate difficulties with social functioning and moderate difficulties in maintaining concentration,

5

persistence and pace, with no episodes of decompensation.  [*Id.*].

Next, the ALJ assessed McPhee's residual functional capacity
("RFC"), finding her capable of performing a limited range of light work that
involved standing or walking no more than two hours a day and sitting for
six, occasional pushing, pulling and operation of foot controls, no crawling
or climbing ladders, ropes or scaffolds, and only occasional balancing,
stooping, kneeling, crouching, climbing ramps or stairs, and handling with
her right upper extremity.  [*Id.*, Tr. 709].  It could also involve only simple,
routine repetitive tasks, minimal changes in a routine work setting, no
production rate pace work, no more occasional interaction with supervisors,
coworkers or the general public and could require no more than
rudimentary reading skills.  [*Id.*].  Finally, McPhee must also avoid
concentrated exposure to temperature extremes, humidity, wetness,
pulmonary irritants, and workplace hazards.  [*Id.*].

At step four, based upon this RFC, the ALJ determined that McPhee
could not return to her past relevant work.  [*Id.*, Tr. 722].  However, she
concluded, with the assistance of VE testimony, that a hypothetical
claimant matching McPhee's profile could perform a significant number of
other jobs in the national economy, including surveillance system monitor
(1,100 jobs in the region) and inspector (1,190 jobs).  [*Id.*, Tr. 723-24].

Therefore, McPhee was not disabled.  [*Id.*].

## II.    STANDARD OF REVIEW

Pursuant to § 405(g), this Court's review is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made in conformity with proper legal standards.  *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014).  Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotation marks and citation omitted).  Only the evidence in the record below may be considered when determining whether the ALJ's decision is supported by substantial evidence.  *Bass v. McMahon*, 499 F.3d 506, 513 (6th Cir. 2007).  "If the [Commissioner's] decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently, and even if substantial evidence also supports the opposite conclusion."  *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted).

With these standards in mind, this Court finds that the ALJ's determination that McPhee is not disabled is supported by substantial

7

evidence.

## III.   ANALYSIS

McPhee's appeal raises only two issues.  First, she argues that the ALJ's decision that she does not meet or equal a listing is not supported by substantial evidence because the ALJ failed to give sufficient weight to her treating physicians, Naveed Mahfooz, M.D. and Linda Hesson, Ph.D.  [R. 14, PgID 1727-36].  Secondly, McPhee argues (albeit tangentially) that the ALJ erred by disregarding the State's decision to grant her benefits.  [*Id.*, PgID 1736-37].

Problematically, McPhee does not explain what precisely was deficient about the ALJ's thorough analysis regarding whether her impairments met or equaled a listing, whether she had residual functional capacity or whether her treating physicians' opinions deserved greater weight.  [See R. 11-10, Tr. 706-22].  She does not identify any listings she would meet even if the ALJ had given controlling weight to the opinions of Drs. Mahfooz and Hesson.  While the ALJ scrupulously detailed the medical and opinion evidence to support her conclusions, McPhee devotes the majority of her brief to reciting legal principles and gives minimal effort to analysis.  [*Compare* ALJ analysis, R. 11-10, Tr. 704-22 to McPhee analysis, R. 14, PgID 1727-28, 1735-36].  Further, McPhee makes

8

numerous representations of what the record shows without bothering to identify where those records are found within the voluminous file. [R. 14, PgID 1727-28, 1735-36].

Under these circumstances, McPhee's arguments should be deemed waived. "[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to ... put flesh on its bones." *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) (citation and internal quotation marks omitted). *See also Kennedy v. Comm'r of Soc. Sec.*, 965 F. Supp. 2d 937, 953 (E.D. Tenn. 2013) ("[A]rguments not raised and supported in more than a perfunctory manner may be deemed waived."). On this basis alone, the Court should deny McPhee's motion for summary judgment and grant the Commissioner's.

Furthermore, neither of McPhee's arguments has merit.

## A.   Weighing of Treating Physician Opinions

The "treating physician rule" requires an ALJ to give controlling weight to a treating physician's opinions regarding the nature and severity of a claimant's condition when those opinions are well-supported by medically acceptable clinical and diagnostic evidence, and not inconsistent

with other substantial evidence.  *Gentry*, 741 F.3d at 723, 727-29; *Rogers*, 486 F.3d at 242-43.  "Even when not controlling, however, the ALJ must consider certain factors, including the length, frequency, nature, and extent of the treatment relationship; the supportability of the physician's conclusions; the specialization of the physician; and any other relevant factors," and give appropriate weight to the opinion.  *Gentry*, 741 F.3d at 723.

### 1.    *Dr. Mahfooz's Opinions*

McPhee's argument regarding Dr. Mahfooz is problematic because he never opined on the issue of medical equivalency.  His first opinion, from February 2009, listed McPhee's conditions as headaches, dizziness, sinus congestion, depression and knee osteoarthritis.  [R. 11-8, Tr. 414].[4] He opined that, as a result of these conditions, McPhee would be limited to standing or walking less than 2 hours a day, lifting less than twenty pounds occasionally, and unable to operate foot controls.  [*Id.*, Tr. 415].  She was further restricted from using either hand for simple grasping, reaching, pushing or pulling, due to two screws in her right elbow.  [*Id.*].  Finally, Dr. Mahfooz opined that McPhee would have limitations on sustained

---

[4] The Court notes that the ALJ's weighing of this opinion was previously addressed, and upheld, by the District Court.  *McPhee*, 2013 WL 3224420, at *11-12.  However, since the ALJ reweighed this opinion on remand, the Court will review her analysis.

concentration, memory, comprehension and following simple directions, that her "unpredictable absenteeism" would prevent her from working at her usual occupation, and that she was disabled. [*Id.*, Tr. 415-16]. Dr. Mahfooz's second opinion, from December 2011, listed McPhee's conditions as morbid obesity, back pain and knee patellar deformity, stated that she was "on lots of medication" and was "completely disabled and unable to work at any place." [R. 11-16, Tr. 1546].

McPhee does not explain how either opinion, even if given controlling weight, would demonstrate that she meets or medically equals a listed impairment, as neither opinion addresses the factors to be evaluated under the listings considered by the ALJ, namely 1.02 (Major dysfunction of a joint) and 1.04 (Disorders of the spine). 20 C.F.R. pt. 404, subpt. P, app. 1 §§ 1.02, 1.04. Furthermore, both opinions were considered by Dr. Holan, the testifying internal medicine expert, who concluded that neither they, nor any other evidence of record, supported a finding that McPhee met or medically equaled any listing. [R. 11-10, Tr. 757-63].

Moreover, although not specifically argued by McPhee, the ALJ did not err in affording limited weight to these opinions and declining to impose additional RFC limitations based thereon. Although McPhee argues that Dr. Mahfooz's opinions were entitled to controlling weight due to his long

11

treatment history with McPhee, the existence of a long-standing treating relationship alone is insufficient to require affording controlling or even superior weight to a treater's opinion over that of a consulting physician if the treating opinion is not supported by the record evidence.  20 C.F.R. § 404.1527; *Sullivan v. Comm'r of Soc. Sec.*, 595 Fed. Appx. 502, 506-507 (6th Cir. 2014); *Rogers-Martin v. Comm'r of Soc. Sec.*, No. 13-544, 2014 WL 2967477, *8 (S.D. Ohio July 1, 2014) (length of treating relationship alone insufficient to accord opinion controlling weight).  "[I]n appropriate circumstances" a state agency consultant's opinion "may be entitled to greater weight than a treating source[ ]."  *Helm v. Comm'r of Soc. Sec.*, 405 Fed. Appx. 97, 1002 (6th Cir. 2011) (quoting SSR 96-6p, 1996 WL 374180, at *2 (1996)).

Here, the ALJ found that Dr. Mahfooz's opinions were not supported by the record evidence, including McPhee's activities of daily living, Dr. Mahfooz's own treatment records, and the record as a whole, including Dr. Holan's testimony.  The ALJ noted that Dr. Mahfooz's initial opinion was simply a checkbox form with only brief explanations and his second merely listed McPhee's diagnoses and then opined she was disabled, a question

properly reserved for the Commissioner.[5]  [R. 11-10, Tr. 718, 720].  She further noted inconsistencies with McPhee's activities of daily living, which included caring for her two children, volunteering at their school, cooking, cleaning, sewing and attending church.  [*Id.*, Tr. 718, 721].

The ALJ also found Dr. Mahfooz's opinions unsupported by McPhee's treatment records, which showed rather conservative treatment for her back and arm pain, and were inconsistent with Dr. Holan's testimony.  [*Id.*, Tr. 710-13, 718, 720].  Indeed, prior to June 2011, McPhee's only complaints of back pain or lower extremity numbness related to two acute traumas she suffered, both of which resolved.  [R. 11-7, Tr. 352-57; R. 11-8, Tr. 423, 425, 469, 471-72, 493, 518; R. 11-16, Tr. 1487].  Although a June 2011 MRI documented a L4-L5 disc herniation with a "tiny foraminal protrusion which contacts the existing right L4 nerve root," [R. 11-16, Tr. 1399-1400], a consultative examination conducted three months later reflected no limitations as a result.  [*Id.*, Tr. 1526-32].

There is no further evidence of back pain treatment until almost a year later, in August 2012, when McPhee's daughter jumped off the couch onto her back.  [R. 11-15, Tr. 1107].  The emergency room exam noted that McPhee moved all extremities well and had full strength, although she gave

---

[5] *See Brock v. Com'r of Soc. Sec.*, 368 F. App'x 622, 625 (6th Cir. 2010) (issue of whether claimant is disabled is reserved for the Commissioner.)

"poor effort." [*Id.*, Tr. 1067, 1107-1108, 1319].  The doctor further

questioned the veracity of her claims of sensation loss because she

unconsciously had reacted to touch at times during the exam.  [*Id.*, Tr.

1319].  McPhee was diagnosed with bilateral leg "traumatic anesthesia" but

the doctor recommended ruling out malingering.  [*Id.*, Tr. 1320].  MRIs of

McPhee's cervical and thoracic spine taken at this time revealed minimally

bulging annuli[6] at C5-C7 and syringomyelia[7] from T8-T11, but no disc

herniation.  [*Id.*, Tr. 1059-62].

McPhee's next complaint of leg numbness did not occur until almost

a year later in July 2013, when she woke up with a painful hip and numb

leg.  [R. 11-16, Tr. 1411].  Her range of motion was intact, and a right hip x-

ray and CT scan were negative.  [R. 11-15, Tr. 1295-96].  Within a week

the pain had resolved.  [R. 11-16, Tr. 1410].

McPhee's arm pain was similarly sporadic and conservatively treated.

She first complained of right elbow pain and locking in May 2007.  [R. 11-8,

Tr. 460].  Her doctor found a normal range of motion and no swelling, and

she was prescribed Motrin and Ultram.  [*Id.*].  An x-ray showed only

placement of two screws from a childhood injury.  [*Id.*, Tr. 500].  An EMG

---

[6] That is, a bulging of the outer ring of the cervical disc.

[7] Syringomyelia "is a disorder in which a cyst forms within the spinal cord."
http://www.ninds.nih.gov/disorders/syringomyelia/detail_syringomyelia.htm

was normal.  [*Id.*, Tr. 489-90].  McPhee next complained of right arm pain and numbness in April and July 2008, and completed a course of physical therapy with 70% improvement in pain, normal range of motion, and good strength.  [*Id.*, Tr. 439; R. 11-7, Tr. 343, 364-65, 368].  McPhee fell and hit her left elbow in January 2009, although an x-ray revealed no fracture.  [R. 11-8, Tr. 421, 492].  The remaining records relevant to her arm include a consultative exam from September 2011 and treatment records from August 2012, both of which revealed good range of motion in both arms, hands and wrists and good grip strength.  [R. 11-15, Tr. 1067; R. 11-16, Tr. 1529-32].

McPhee underwent an increased course of treatment for her right knee pain, including arthroscopic partial chondroplasty of the patella.  [R. 11-7, Tr. 343-48, R. 11-8, Tr. 433, 439, 444, 466, 499, 517].  However, subsequent x-rays of her right knee were unremarkable, an EMG was normal, and exam notes reflected normal range of motion and gait with no neurological deficits.  [R. 11-7, Tr. 343; R. 11-8, Tr. 488, 494, 508; R. 11-15, Tr. 1058, 1067; R. 11-16, Tr. 1530].  A 2012 MRI showed chondral degenerative changes of the patella, resulting in slight effusion and a positive Drawer's test, but which did not restrict her range of motion.  [R. 11-15, Tr. 1066; R. 11-16, Tr. 1397-98, 1565].  Her orthopedic surgeon

15

listed her condition as stable and recommended quad strengthening exercises.  [R. 11-15, Tr. 1091; R. 11-16, Tr. 1554-55].

In 2008, McPhee underwent physical therapy for left knee pain and was discharged with pain of 0/10 for three weeks and an ability to ambulate 1-2 miles.  [R. 11-7, Tr. 369-76].  In 2009, McPhee's left knee showed patchy marrow edema likely due to abnormal patellar tracking, but treatment of this knee was very conservative, consisting mainly of physical therapy and quad strengthening exercises such as cycling.  [R. 11-8, Tr. 611-12, 662; R. 11-15, Tr. 1093, 1096].

Dr. Holan considered all of these opinions and all of the records and testified that McPhee's impairments warranted some limitations, but not to the degree Dr. Mahfooz opined.  [R. 11-10, Tr. 757-63].  The ALJ afforded Dr. Holan's testimony significant weight and McPhee does not show how this was error.  Moreover, McPhee has not identified any additional limitations the ALJ should have imposed as a result of her impairments.  As such, the Court finds that the ALJ gave good reasons, supported by substantial evidence, for affording Dr. Mahfooz's opinions limited weight and giving more weight to the opinion of Dr. Holan, on both the issues of equivalency and the imposition of limitations.

16

### 2.    *Dr. Linda Hesson's Opinions*

McPhee further takes issue with the ALJ's assessment of the opinions of her therapist, psychologist Dr. Linda Hesson.  Unlike Dr. Mahfooz, Dr. Hesson did offer opinions relevant to the issue of medical equivalency, finding in November 2012 that McPhee was markedly limited in her ability to maintain activities of daily living, social functioning and concentration, persistence and pace, and had suffered three episodes of decompensation within a twelve-month period, each of at least two weeks duration.  [R. 11-15, Tr. 1339].  She also found that McPhee suffered from a medically documented history of a chronic mental or affective disorder for at least two years, coupled with a residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands would cause decompensation.  [*Id.,* Tr. 1339-40].  Additionally, Dr. Hesson indicated that McPhee suffered from an anxiety disorder resulting in a complete inability to function independently outside of the home.  [*Id.*, Tr. 1340].

In a September 2012 opinion, Dr. Hesson found McPhee markedly limited in seven of twenty mental areas, and moderately limited in seven others.  [R. 11-16, Tr. 1653, 1660].  She opined that McPhee would be absent from work more than four days a month due to chronic depression

17

that "is not going to get better" and that her "IQ of 75 also limits [her] ability." [R. 11-15, Tr. 1340].

The ALJ gave limited weight to these opinions, finding them inconsistent with McPhee's activities of daily living, and unsupported by the record evidence. These conclusions were supported by Dr. Fremont, the testifying psychological expert, who found that none of McPhee's mental impairments met or medically equaled a listing. [R. 11-10, Tr. 721, 765-74].

The record also supports the ALJ's conclusion. Of significant import, although Dr. Hesson opined that McPhee had suffered three episodes of decompensation, neither Dr. Fremont nor this Court could find any records evidencing any episodes of decompensation of any duration. [R. 11-10, Tr. 767]. Dr. Fremont further noted that other symptoms Dr. Hesson identified were similarly missing from the record evidence, including oddities of thought, impaired memory, emotional withdrawal and a poor prognosis. [R. 11-10, Tr. 768, 771-72; R. 11-15, Tr. 1338].

In addition, while Dr. Hesson opined that McPhee could not function outside of the house, [R. 11-15, Tr. 1340], her last examination documented McPhee having attended the examination alone and that she had gone to her other appointments alone as well. [R. 11-16, Tr. 1659]. Although Dr. Hesson's November 2013 opinion stated that McPhee's

18

Global Assessment of Functioning ("GAF")[8] scores were between 50-60, with her highest being 60, [R. 11-15, Tr. 1337], Dr. Hesson had issued McPhee a GAF score of 64 only three months earlier, which denotes mild symptoms.  [R. 11-16, Tr. 1654].

These opinions were rendered almost two years after Dr. Hesson's most recent documented treatment of McPhee, in 2011.  [R. 11-16, Tr. 1516].  In February of that year, McPhee's prescribing psychiatrist, Mukesh Lathia, M.D., had changed her medication from Remeron to Prozac and noted significant improvement of her depression as a result.  [R. 11-15, Tr. 1037-39; R. 11-16, Tr. 1516, 1519-21].  He documented that both McPhee's boyfriend and Dr. Hesson had also seen this improvement, and by July of 2011 he was "not seeing any anxiety or depression" and opined that she was "doing well now."  [R. 11-15, Tr. 1037].  There are no further treatment records related to McPhee's mental condition after 2011.  Consequently, the ALJ did not err in affording limited weight to Dr.

---

[8] The GAF scale is a method of considering psychological, social, and occupational function on a hypothetical continuum of mental health. The GAF scale ranges from 0 to 100, with serious impairment in functioning at a score of 50 or below.  Scores between 51 and 60 represent moderate symptoms or a moderate difficulty in social, occupational, or school functioning."  *Norris v. Comm'r of Soc. Sec.*, No. 11-5424, 461 Fed. Appx. 433, 436 n.1 (6th Cir. 2012) (citations omitted).  Scores in the range of 61-70 indicate some mild symptoms.  *Karger v. Comm'r of Soc. Sec.*, 414 Fed. Appx. 739, 745 (6th Cir. 2011).

Hesson's 2013 opinions.

### B.    Consideration of Award of State Disability Benefits

McPhee appears to make a tangential argument that the ALJ did not properly explain his decision to disregard the State's award and renewal of disability benefits to McPhee, as required by the Court's remand order. However construed, her argument relies completely on a finding that her doctors' opinions should have been afforded controlling weight. Therefore, this argument fails for the reasons explained above.

Furthermore, the Court finds that the ALJ properly considered the State's decisions and found them unsupported by citations to specific medical evidence and contrary to the great weight of the evidence. [R. 11-8, Tr. 651-60; R. 11-10, Tr. 719-20; R. 11-16, Tr. 1646-51]. The initial decision to award McPhee benefits did not refer to any specific medical evidence, and the decision to renew cited only the June 2011 MRI results [R. 11-8, Tr. 651-59; R. 11-16, Tr. 1647]. The Court finds no error with the ALJ's decision to give these decisions little weight.

## IV.    CONCLUSION

For the foregoing reasons, the Court RECOMMENDS that McPhee's Motion for Summary Judgment [R. 14] be DENIED, the Commissioner's Motion [R. 17] be GRANTED and this case be AFFIRMED.

> s/Elizabeth A. Stafford
> ELIZABETH A. STAFFORD
> United States Magistrate Judge

Dated: July 27, 2015

## **NOTICE TO THE PARTIES REGARDING OBJECTIONS**

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed.R.Civ.P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991)*; United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that party might have to this Report and Recommendation. *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). A copy of any objection

must be served upon this Magistrate Judge. E.D. Mich. LR 72.1(d)(2).

Each **objection must be labeled** as "Objection #1," "Objection #2," etc., and **must specify** precisely the provision of this Report and Recommendation to which it pertains.  Not later than fourteen days after service of objections, **the non-objecting party must file a response** to the objections, specifically addressing each issue raised in the objections in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.  The response must be **concise and proportionate in length and complexity to the objections**, but there is otherwise no page limitation.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

### CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on July 27, 2015.

s/Marlena Williams
MARLENA WILLIAMS
Case Manager
